UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KENNETH PAGLIAROLI,

        Plaintiff,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.

Civ. No. 18-12412 (FLW) (TJB)

OPINION

**FREDA L. WOLFSON, U.S.D.J.**

## I.    INTRODUCTION

Plaintiff, Kenneth Pagliaroli ("Pagliaroli" or "Plaintiff"), is a state prisoner, presently incarcerated at New Jersey State Prison ("NJSP"), in Trenton, New Jersey, who is proceeding *pro se* with a complaint asserting civil rights claims, under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), and tort claims. (ECF No. 1, at ECF pp. 8–20, Compl.) Presently before the Court are four separate motions for dismissal, under Federal Rule of Civil Procedure 12(b)(6), filed by defendants Abu Ahsan ("Ahsan"), (ECF No. 6), the State of New Jersey and the New Jersey Department of Corrections ("NJDOC") (collectively, "the State Defendants"), (ECF Nos. 16 & 17), and Ihuoma Nwachukwu ("Nwachukwu"), (ECF No. 18). For the following reasons, these dismissal motions are GRANTED.

## II.    BACKGROUND AND ALLEGATIONS

Pagliaroli filed his Complaint with the Superior Court of New Jersey, Mercer Vicinage, Civil Division, on April 25, 2018. (ECF No. 1 at ECF p. 8.) His pleading is divided into two distinct sections: "Bladder Cancer" and "Neck Injury." (*See id.*) In the first section, Pagliaroli alleges that, "[s]ome time around 2013," he began to experience abdominal pressure and

cramping, which he believed to be signs of bladder cancer. (*Id.* at ECF p. 11.) He alleges that he explained his suspicions to various medical providers—defendants James Brewin, Provider Adams, Provider Ivory ("Ivory"), Ahsan, and Joy Camarillo ("Camarillo")[1]—and asked to be tested for bladder cancer, but that each one told him that no test for bladder cancer exists. (*See id.* at ECF pp. 11–13.) He complains that, when he asked Ivory to be tested for bladder cancer, she performed a painful and embarrassing rectal test, which never produced any results. (*Id.* at ECF pp. 11–12.)

Pagliaroli asserts that, on December 31, 2015, he began to pass bloody urine, and that Camarillo prescribed him antibiotics, despite Pagliaroli's urging her that the cause was bladder cancer. (*Id.* at ECF p. 13.) He explains that an ultrasound scan was ordered and that, when it was performed two months later, it revealed a cancerous tumor on his bladder. (*Id.*) He recounts that he went to a hospital to have the tumor surgically removed on April 14, 2016.[2] (*Id.*)

In the section titled "Neck Injury," Pagliaroli recounts that, on April 19, 2016, when he was being transferred back from the hospital to the prison after undergoing surgery to remove his bladder tumor, he was transported in a van by defendants S.C.O. G. Kern and S.C.O. D. Boone.[3] (ECF No. 1 at ECF p. 16.) He alleges that the van driver[4] drove erratically, swerving, speeding, and slamming on the brakes, causing Pagliaroli to be thrown head first against the wall of the van

---

[1] So far, Ahsan is the only one of these defendants to have appeared in this action.

[2] Pagliaroli also makes passing references to delays in medical staff detecting nodules developing in his lung, though it does not appear these allegations form a part of his claims in this action. (*See* ECF No. 1 at ECF pp. 14–15.)

[3] Neither of these defendants have appeared in this action.

[4] Pagliaroli does not specify who was driving the van.

so hard that he lost consciousness. (*Id.*) He alleges that, after he regained consciousness, his legs felt numb and tingly, and he explains that he was taken to the medical department in a wheelchair upon arriving at the prison. (*Id.* at ECF pp. 16–17.) Pagliaroli complains that, when he got to the medical department, he "only received a visual from nurses and from Dr. Nwachukwu, with no X-Rays, or MRI or seening [sic] of any kind of specialist for my injury to the neck, and head." (*Id.* at ECF pp. 17–18.) Pagliaroli alleges that, after a year had passed, he was placed in therapy for his neck injury and that he still suffers pain resulting from this incident. (*Id.* at ECF p. 18.)

Pagliaroli asserts that Defendants were deliberately indifferent to his serious medical needs in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment. (*Id.* at ECF pp. 10, 19.) He seeks declaratory judgment and $500,000 in compensatory damages, as well as costs. (*Id.* at ECF p. 20.)

On August 2, 2018, Ahsan, with the consent of Nwachukwu and the State Defendants, removed the action to this Court, under 28 U.S.C. § 1331. (ECF No. 1, Notice of Removal, ¶ 5.) Ahsan indicated that, at the time of removal, other named defendants had not yet been served. (*Id.*)

Ahsan and Nwachukwu, who are represented by the same counsel, have now filed individual, but very similar, motions to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Ahsan Mot. to Dismiss, ECF No. 6; Nwachukwu Mot. to Dismiss, ECF No. 18.) They both argue that Pagliaroli has failed to state a claim against them, that his claims are barred as untimely, and that his claims must fail as he did not exhaust administrative remedies. (*See* Ahsan Br. in Supp., ECF No. 6-1; Nwachukwu Br. in Supp., ECF No. 18-1.)

Pagliaroli's opposition briefs to these motions are also very similar to each other.[5]  (*See* Opp'n to Ahsan Mot., ECF No. 7; Opp'n to Nwachukwu Mot., ECF No. 19.)  Ahsan and Nwachukwu each filed a reply brief to the opposition briefs, and Pagliaroli filed un-permitted sur-replies.  (*See* ECF Nos. 8, 11, 20, & 23.)

The State Defendants also filed two identical motions to dismiss the Complaint under Rule 12(b)(6).  (ECF Nos. 16 & 17.)  They raise the same arguments as Ahsan and Nwachukwu, but additionally assert that Pagliaroli failed to file proper notices of tort claims and that his civil rights claims against the State Defendants must be dismissed as they are not persons for the purposes of 42 U.S.C. § 1983 and the NJCRA.  (*See id.*)  Pagliaroli has not opposed these motions.

### III. LEGAL STANDARDS

**A. Standard for Review on Motion to Dismiss Under Rule 12(b)(6)**

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a

---

[5] Indeed, in parts of Pagliaroli's opposition to Nwachukwu's motion, he still discusses various actions allegedly taken by Ahsan. (*See* ECF No. 19 at 5–6.)

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**B. Civil Rights Laws**

As a general matter, a plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Generally, personal involvement by the defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of *respondeat superior*. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability

5

generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).

The NJCRA provides a similar cause of action to § 1983, stating, in relevant part,

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c). Due to the intentional statutory similarities, this provision "is interpreted as analogous to § 1983." *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) ("To sustain a § 1983 claim, or a NJCRA claim, a plaintiff must show that a defendant had in place a custom or policy which resulted in constitutional deprivation.").

## IV. ANALYSIS

### A. Failure to Exhaust

All moving defendants argue that the Complaint must be dismissed because Pagliaroli failed to exhaust his administrative remedies. (ECF No. 6-1 at 6; ECF Nos. 16 & 17 at 9–12; ECF No. 18-1 at 8.) Exhaustion is a "non-jurisdictional prerequisite" and, consequently, is a "'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (emphasis omitted) (quoting *Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2013)).

The Prisoner Litigation Reform Act of 1995 ("PLRA") provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). The exhaustion requirement is mandatory and, thus, bars an inmate from commencing such an action without first properly exhausting available administrative remedies. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 85, 93–94 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016).

The exhaustion argument is not properly raised at this time, however. Failure to exhaust administrative remedies is an affirmative defense, which the defendant bears the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). "[T]he defendant must prove that the prisoner-plaintiff failed to exhaust each of his claims. There is no 'total exhaustion' rule permitting dismissal of an entire action because of one unexhausted claim." *Small*, 728 F.3d at 269; *see also Jones*, 549 U.S. at 219–24. Thus, dismissal is not warranted based on Pagliaroli's failure to plead that he exhausted administrative remedies. Defendants bear the burden of proving that Pagliaroli has failed to exhaust his administrative remedies as to any given claim, but they have failed to meet this burden, instead arguing that Pagliaroli has failed to allege exhaustion. (*See* ECF No. 6-1 at 6; ECF Nos. 16 & 17 at 11; ECF No. 18-1 at 8.)

7

### B. Claims Against the State

The State Defendants assert that Pagliaroli's civil rights claims must be dismissed as against them, as they are not "persons" subject to suit under § 1983 or the NJCRA. (ECF Nos. 16 & 17 at 12–14.) As explained above, § 1983 permits actions against a "person." 42 U.S.C. § 1983. Neither a State itself nor a department of a State, such as NJDOC, is considered a "person" for the purposes of § 1983.[6] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989); *see also Jones v. Minner*, 752 F. App'x 112, 113 (3d Cir. 2019); *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 854 (3d Cir. 2014). As the NJCRA is interpreted in the same manner as § 1983, the State and its agencies are also not considered "persons" for the purposes of NJCRA liability. *Didiano v. Balicki*, 488 F. App'x 634, 637–39 (3d Cir. 2012); *see also Estate of Lagano*, 769 F.3d at 856. Accordingly, all claims against the State Defendants under § 1983 and the NJCRA are dismissed with prejudice.

### C. Failure to State a Claim

All moving defendants assert that Pagliaroli has failed to state a claim against them. (ECF No. 6-1 at 3–5; ECF Nos. 16 & 17 at 5–8; ECF No. 18-1 at 5–7.) Under Federal Rule of Civil Procedure 8, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As explained above, to survive a motion to dismiss for failure to state a claim, a pleading must state a claim against a defendant that is facially plausible. *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when

---

[6] Similarly, as a claim against a state official in his or her official capacity is essentially a claim against the state, § 1983 claims are not permitted against state officials in their official capacities, except to the extent that such claims seek prospective injunctive relief. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 71, & n.10 (1989).

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

I construe Pagliaroli's Complaint as generally seeking to assert claims for inadequate medical treatment in violation of the Eighth Amendment, under § 1983 and the NJCRA, and also as asserting claims for the tort of medical malpractice. An incarcerated plaintiff asserting a claim for inadequate medical care under the Eighth Amendment must show the existence of a serious medical need and that facility staff demonstrated deliberate indifference to that medical need. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017); *Mattern v. City of Sea Isle*, 657 F. App'x 134, 138 (3d Cir. 2016); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). A finding of deliberate indifference requires demonstrating that the defendant had the requisite state of mind, *i.e.*, knowledge of a serious medical risk and disregard for that risk. *See Parkell*, 833 F.3d at 335, 337; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). Under New Jersey law, a plaintiff asserting medical malpractice must show a standard of care, that a defendant's deviation from that standard caused an injury, and resulting damages. *Komlodi v. Picciano*, 89 A.3d 1234, 1246 (N.J. 2014); *see also Natale*, 318 F.3d at 579 & n.3.

Pagliaroli's only assertions concerning Ahsan are that he was the medical director of NJSP, (ECF No. 1 ¶ 11), and this sentence, "I still refused to stop trying to get tested for bladder

9

cancer, so I talked to Dr. Ahsan and said please test me for bladder cancer, he told me there is no test for bladder cancer." (*Id.* at ECF p. 13.) Pagliaroli's only specific assertions as to Nwachukwu are that she was a medical doctor at the NJSP and that, after he was allegedly injured during the April 19, 2016, van ride, that Petitioner "complained the hole [sic] time when [he] was in the infirmary about [his] neck and [his] head but only received a visual from nurses and from Dr. Nwachukwu, with no X-Rays, or MRI or seening [sic] any kind of specialist for [his] injury to the neck, and head at that time." (*Id.* at ECF p. 18.) Pagliaroli's only specific allegations against the State Defendants are that the State "is the owner and operator" of NJSP and that the NJDOC is a state agency. (*Id.* ¶¶ 2–3.)

The conclusory allegations against Ahsan, Nwachukwu, and the State Defendants are insufficient to state any claim against them under the pleading standard created by *Iqbal* and *Twombly*. Pagliaroli's Complaint contains only the barest allegation against each of the moving defendants, and it is unclear in what specific way he alleges that they were deliberately indifferent to a serious medical condition or in what way they deviated from a standard of care. Indeed, while Pagliaroli alleged that he told every provider at the prison that he had bladder cancer, he also states, "I really don't think anyone even believed me that I had cancer." (ECF No. 1 at ECF p. 13.) This would seem to preclude any claim of deliberate indifference to Pagliaroli's cancer, which would require Defendants to *know* of Pagliaroli's serious medical condition and show deliberate indifference towards it. *See Parkell*, 833 F.3d at 335, 337; *Natale*, 318 F.3d at 582.

Pagliaroli, in his opposition briefs, newly asserts that he seeks to hold Ahsan and Nwachukwu liable as supervisors. (ECF No. 7 at 1; ECF No. 19 at 1–2.) He alleges that Ahsan was medical director at NJSP until "around the end of 2015," when Nwachukwu assumed that

10

role. (ECF No. 19 at 2.) Pagliaroli now argues that Ahsan "was aware of all medical treatment and complaints advanced by patients." (ECF No. 7 at 1.) He makes the same allegation of Nwachukwu, and additionally claims that he told her that he "had cramping at times, blood in the urine and [he] had difficulty urinating." (ECF No. 19 at 1–2.) It is, however "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo*, 836 F.2d 173, 181 (3d Cir. 1988). Thus, the Court will not consider allegations raised for the first time in Pagliaroli's opposition briefs on these motions. *See Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008). Accordingly, I conclude that the present Complaint fails to state any plausible claim against Ahsan, Nwachukwu, or the State Defendants, and the claims against them are dismissed without prejudice. The Court will permit Pagliaroli to file an amended complaint that seeks to correct these deficiencies within 30 days.

**D. Other Arguments**

As all claims against the moving defendants are dismissed, the Court need not reach the other arguments in favor of dismissal. The Court will, however, additionally permit Pagliaroli to address these arguments in any amended pleading filed under the leave granted by this Opinion and the accompanying Order. Permissible amendments under this directive include allegations relating to the timeliness of the Complaint, as the Court perceives from the present motion practice potential issues relating to the continuing-violation doctrine, the discovery rule, and the prison mailbox rule. Pagliaroli may also include any amendments related to the exhaustion of administrative remedies and to the notice provision of the New Jersey Tort Claims Act.

## V. CONCLUSION

For the foregoing reasons, Ahsan's motion to dismiss the claims against him, (ECF No. 6), is GRANTED, and all claims against Ahsan are dismissed without prejudice.  The motions by the State of New Jersey and the New Jersey Department of Corrections, (ECF Nos. 16 & 17), are GRANTED, and all claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act as against those defendants are dismissed with prejudice, while all other claims against those defendants are dismissed without prejudice.  Nwachukwu's motion to dismiss the charges against her, (ECF No. 18), is GRANTED, and all claims against Nwachukwu are dismissed without prejudice.  Pagliaroli is granted leave to file an amended complaint addressing the deficiencies identified herein, as well as issues related to the parties' arguments not substantively addressed in this Opinion, within 30 days.  An appropriate order follows.


DATED: March 28, 2019                              /s/ Freda L. Wolfson
                                                   FREDA L. WOLFSON
                                                   United States District Judge