UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KENNETH PAGLIAROLI, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 18-12412 (FLW) (TJB) |
| | : | |
| v. | : | |
| | : | |
| NEW JERSEY DEPARTMENT OF | : | **OPINION** |
| CORRECTIONS et al., | : | |
| | : | |
| Defendants. | : | |

**FREDA L. WOLFSON, U.S.D.J.**

## I. INTRODUCTION

Plaintiff, Kenneth Pagliaroli ("Pagliaroli" or "Plaintiff"), is a state prisoner, presently incarcerated at New Jersey State Prison ("NJSP"), in Trenton, New Jersey, who is proceeding *pro se* with an Amended Complaint asserting civil rights claims under 42 U.S.C. § 1983 and state law. Defendant Abu Ahsan, M.D. ("Dr. Ahsan"), Ihuoma Nwachukwu, M.D. ("Dr. Nwachukwu"), and Providers Donique Ivery ("Ivery"), Joy Camarillo ("Camarillo"), Inaisha Jackson ("Jackson"), and James Brewin ("Brewin") (collectively "Medical Defendants") have filed a motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons explained in this Opinion, the motion to dismiss is denied without prejudice to the Medical Defendants' filing of a motion for summary judgment at the appropriate time.

## II. PROCEDURAL HISTORY & FACTUAL BACKGROUND

### a. Procedural History

The Original Complaint in this matter was filed in the Superior Court of New Jersey, Law Division, Mercer County on April 25, 2018, and asserted claims for relief arising from Plaintiff's diagnosis with and treatment for bladder cancer and a separate neck injury. The Original

Complaint was removed by Defendant Dr. Ahsan on August 2, 2018, with the consent of Defendant Dr. Nwachukwu, the State of New Jersey and the New Jersey Department of Corrections ("NJDOC"). ECF No. 1, Notice of Removal, ¶ 5. Defendant Ahsan indicated a belief that other Medical Defendants and Provider Adams had not yet been served. *Id.*

Defendants Ahsan, Nwachukwu, The State of New Jersey, and NJDOC subsequently filed individual motions to dismiss the Original Complaint, ECF Nos. 6, 16, 17, 18, which were granted by the Court on March 28, 2019. ECF Nos. 35-36. On March 28, 2019, the Court, in relevant part, dismissed <u>without prejudice</u> the Eighth Amendment claims of inadequate medical treatment against Defendants Ahsan and Nwachukwu for failure to state a claim for relief and declined to reach the state law claims for medical negligence in the absence of a viable federal claim.[1] *See id.* The Court did not address the sufficiency of the allegations against any other Medical Defendants and provided Plaintiff with leave to amend to cure the deficiencies in his claims against Ahsan and Nwachukwu. *See id.*

Plaintiff filed an Amended Complaint on May 1, 2019. ECF No. 39. Subsequently, Defendants Ahsan and Nwachukwu together with Defendants Ivery, Camarillo, Jackson, and Brewin moved to dismiss the Amended Complaint. Because Plaintiff is proceeding pro se, and may not have realized that his Amended Complaint replaces all prior complaints, the Court construes Plaintiff's Original and Amended Complaints together below.[2]

---

[1] The Original Complaint contained insufficient allegations regarding the personal involvement of Defendants Ahsan and Nwachukwu, and appeared to rely on the impermissible theory of *respondeat superior*.

[2] "[I]n general, an amended pleading—like the amended complaint here—supersedes the earlier pleading and renders the original pleading a nullity." *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (citing *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013); 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010)). Here, Plaintiff, was given leave to submit an Amended Complaint as to Defendants Ahsan and Nwachukwu and may not have realized that his Amended Complaint

### b. Allegations in the Original and Amended Complaints

Plaintiff's Original and Amended Complaints are not a model of clarity. Nevertheless, as discussed below, the allegations against the Medical Defendants relate to alleged inadequate medical care in connection with two distinct medical concerns: "Bladder Cancer" and a "Neck Injury." ECF No. 1 at ECF p. 8; ECF No. 39, Amended Complaint at Count One and Count Two.

### 1. Diagnosis and Treatment for Bladder Cancer

During the relevant period, Plaintiff was incarcerated at NJSP. In late 2013 or early 2014, Plaintiff began to experience symptoms, including pressure in his lower abdominal area, cramping, and an urgent need to urinate. Original Complaint at 11. Because he has a family history of cancer and his brother had bladder cancer in 2006, he asked his brother about his symptoms, which were similar to Plaintiff's symptoms. *Id.* Plaintiff believed that his symptoms indicated that he also had bladder cancer. At a "Chronic Care" appointment, Plaintiff told Defendant Brewin about his symptoms and family history, but Brewin told him there was no test for bladder cancer. Plaintiff next told Defendant Adams,[3] who also told him there was no test for bladder cancer. *Id.*

Plaintiff's symptoms continued, and he also began to experience pain in his right testicle. In late 2013, Plaintiff was treated by Defendant Ivory and told her that he believed he had bladder cancer based on his brother's history of cancer and his symptoms. Ivory performed an embarrassing and painful rectal exam on Plaintiff in front of two corrections officers, took a stool

---

would replace the original with respect to the other Medical Defendants. The Court will therefore construe both Complaints together. Going forward, Plaintiff is warned that any amended complaint will replace <u>all prior complaints</u> in this matter.

[3] Defendant Adams has not appeared in this action.

sample, and did not explain why she performed the exam or took the sample. Plaintiff states that he believes that she intentionally tried to hurt him and he felt violated by the exam and sought mental health counseling afterwards. *Id.* at 11-12.

Plaintiff next asked Defendant Ahsan, who was the Medical Director at the time, to test him for bladder cancer, and Defendant Ahsan also told him there was no test for bladder cancer. *Id.* at 12.

Plaintiff was next treated by Defendant Camarillo. *Id.* at 13. When Plaintiff asked her to test him for bladder cancer, she also told Plaintiff that there is no test for bladder cancer. Defendant Camarillo examined Plaintiff and ordered an ultrasound of his right testicle, but did not order an ultrasound of his bladder, which Plaintiff claims would have detected the bladder cancer. *See id.*

On December 31, 3015, Plaintiff began to experience blood in his urine. *Id.* at 13. He was treated by Defendant Camarillo, who put him on antibiotics. Plaintiff again told her that he had bladder cancer. At some point after that, Defendant Camarillo ordered an ultrasound of his bladder, which took two months to be approved by the medical board. Plaintiff then needed an MRI to better visualize the cancer, which took another month. According to the Original Complaint, a month after the MRI, Plaintiff received surgery to remove the cancerous tumor.[4] *Id.*

After his surgery, Plaintiff's oncologist told him that there are tests for bladder cancer and that a less invasive treatment would have been available if he had been diagnosed earlier. *Id.* at 14. Plaintiff asserts that the Providers who treated him lied to him when they told him there

---

[4] In the Original Complaint, Plaintiff lists his surgery date as April 14, 2016. In his Amended Complaint, he lists the surgery date as May 14, 2016. This discrepancy may be relevant to the timeliness of the Complaint.

was no available test for bladder cancer and provided a "BAND-AID treatment to save money[.]" *Id.* at 15.

In his Amended Complaint, Plaintiff reiterates the allegations of his Original Complaint but elaborates regarding the involvement of Defendants Dr. Nwachukwu and Ahsan.[5] *See* Amended Complaint at ¶¶ 24-25. From late 2013-late 2015, Defendant Dr. Ahsan was the "head doctor" and Dr. Nwachukwu reported to him *Id.* Dr. Nwachukwu took over as the Director from Dr. Ahsan at the end of 2015. Plaintiff informed Dr. Nwachukwu that he believed he had bladder cancer "numerous times from about 2013 to 2016." He also told Defendant Ahsan "in person" that he could not get testing for bladder cancer. *Id.* at ¶ 28. When the providers and Dr Nwachukwu refused to test Plaintiff for bladder cancer, Plaintiff asked to see Dr. Ahsan, but he refused to see Plaintiff and would walk away and close his door when Plaintiff tried to speak to him. *Id.* at ¶¶ 58-60.

In the Amended Complaint, Plaintiff also appears to assert that he told Defendant Jackson that he could not get testing for bladder cancer.[6] *Id*. at ¶ 28. When he asked Provider Jackson for an MRI to test him for cancer, the Defendant told him "DO YOU KNOW HOW EXPENSIVE AN MRI IS!" *Id.* at ¶¶ 35-36.

---

[5] The Court notes that the Amended Complaint also adds Defendant University Correctional Health Care, Rutgers, an entity that has not entered an appearance in this matter. The Court notes that, like supervisors, a corporation under contract with the state cannot be held liable for the acts of its employees or agents under a theory of *respondeat superior*. *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). An entity may, however, be held liable for the acts of an employee if those acts are deemed the result of a policy or custom of the entity, where the inadequacy of an existing practice is so likely to result in the violation of constitutional rights that the entity can reasonably be said to have been deliberately indifferent to the plaintiff's serious medical needs. *See Albrecht v. Correctional Med. Services*, No. 06-2772MLC, 2009 WL 1834320, at *7 (D.N.J. June 25, 2009) (citing *Natale*, 318 F.3d at 584); *see also Brown v. Correctional Medical Services*, 2016 WL 7130921, at *4 (D.N.J. Dec. 7, 2016) (explaining same).

[6] The Original Complaint contains similar allegations.

As in his Original Complaint, Plaintiff reiterates in the Amended Complaint that the Medical Defendants did not believe Plaintiff had bladder cancer and would not take Plaintiff's complaints seriously. *Id.* at ¶ 38.

Finally, Plaintiff elaborates on his condition prior to surgery and explains in his Amended Complaint that he continued to urinate blood for more than four months, from January 1, 2016 to May 14, 2016, when he had his surgery. *Id.* at ¶ 47. During this period, Plaintiff also had other symptoms, including urgency and cramping. *Id.* at ¶ 48. Plaintiff asserts that the Defendants "just kept dragging their feet as Plaintiff suffered urinating blood." *Id.* at ¶ 47. Plaintiff states that he was in so much pain he was not sure if he would live or die and that Defendants did not care if he lived or died. *Id.* at ¶¶ 56-57.

### 2. Neck Injury

On May 19, 2016,[7] Plaintiff was being transferred back from the hospital to the prison after undergoing surgery to remove a bladder tumor. *See* Amended Complaint at ¶ 82. He was transported in a van by Defendants S.C.O. Kern and S.C.O. Boone. ECF No. 1 at 16. The van driver drove erratically, swerving, speeding, and slamming on the brakes, causing Plaintiff to be thrown head-first against the wall of the van so hard that he lost consciousness. *Id.* After Plaintiff regained consciousness, his legs felt numb and tingly, and he could not move them. Plaintiff was taken to the medical department in a wheelchair upon arriving at the prison.[8] *Id.* at 16–17.

When Plaintiff got to the medical department, he "only received a visual from nurses and from Dr. Nwachukwu, with no X-Rays, or MRI" and was not immediately seen by a specialist

---

[7] In his original Complaint Plaintiff asserts that his neck was injured on April 19, 2016.

[8] These Defendants moved to dismiss the Complaint, and the Court addressed the allegations against these defendants in a separate Opinion and Order. *See* ECF Nos. 56-57.

for his injuries. *Id.* at 17–18. It also took a year before Plaintiff was placed in therapy for his neck injuries, and by that time his neck was "frozen[.]" *Id.* at 18.

In his Amended Complaint, Plaintiff provides additional facts about Defendant Dr. Nwachukwu's involvement in denying him treatment for his neck injury. According to the Amended Complaint, Dr. Nwachukwu was the medical director when Plaintiff injured his neck. Amended Complaint at ¶ 66. Plaintiff asserts that he is not being treated for his neck injury even after the specialist gave Dr. Nwachukwu an order that she "refused to fill." *Id.* at ¶ 67. Plaintiff elaborates that he was treated by a neurosurgeon specialist on August 1, 2017. *Id.* at ¶ 76. The neurosurgeon specialist wrote a report in late 2017 or early 2018 stating that Plaintiff's left shoulder should be operated on first, followed by a block on his lower back, followed by Plaintiff's neck. *Id.* at ¶¶ 69-70. The neurosurgeon specialist also recommended that Plaintiff should receive an MRI scan of his left shoulder and have an epidural steroid injection of his lumbar spine. *Id.* at ¶ 77. It is not clear from the Amended Complaint whether Plaintiff received treatment for his shoulder and back.

Plaintiff concedes in the Amended Complaint that he has received some therapy for his neck and was referred to a specialist but alleges that he has not received meaningful treatment for his neck injury. *Id.* at ¶ 83. Plaintiff alleges he was also taken off all pain medicine in May or June of 2017 and continues to suffer significant neck pain. *Id.* at ¶¶ 74-75. Plaintiff also asserts that he was never seen by a pain management specialist as recommended by a specialist on May 26, 2017. *Id.* at ¶ 85.

### III. <u>STANDARD OF REVIEW</u>

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

As a pro se litigant, Plaintiff is entitled to liberal construction of his complaint. *See Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### IV. ANALYSIS

The Medical Defendants make a number of arguments for dismissal of the Complaint. They argue that Plaintiff has failed to exhaust his administrative remedies and that the Complaint is untimely. As to the substance, they argue that Plaintiff has not cured the deficiencies in his Original Complaint as to Defendants Ahsan and Nwachukwu and that he fails to state any claims for relief as to the remaining Medical Defendants. *See* ECF No. 47-1.

#### a. Exhaustion of Administrative Remedies

In Point IV, the Medical Defendants argue that the Complaint should be dismissed with prejudice because Plaintiff failed to exhaust administrative remedies.[9] *See* ECF No. 47-1, at 15-

---

[9] This is the second time Defendants Ahsan and Nwachukwu have made this argument for dismissal despite the fact that the Court previously denied the motion to dismiss on exhaustion

16. The Prisoner Litigation Reform Act of 1995 ("PLRA") provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). The exhaustion requirement is mandatory and, thus, bars an inmate from commencing such an action without first properly exhausting available administrative remedies. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 85, 93–94 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016).

As explained in the Court's prior Opinion, failure to exhaust administrative remedies is an affirmative defense, which the defendant bears the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Inmates are not required to plead or demonstrate exhaustion in their complaints. *Id.* For this reason, the Court will deny without prejudice the motion to dismiss for failure to plead exhaustion of administrative remedies. At the appropriate time, Medical Defendants are free to file a motion for summary judgment on exhaustion of administrative remedies.

---

grounds as premature. Making repetitive arguments for dismissal that have been rejected by the Court wastes the Court's time and resources.

**b. Timeliness**

In Point II, the Medical Defendants argue that the Complaint is untimely as to the allegations surrounding his diagnosis and treatment for bladder cancer. ECF No. 47-1, at 6-7. Congress has not codified a statute of limitations applicable to suits for the vindication of civil rights and has instead "determined that gaps in federal civil rights acts should be filled by state law, as long as that law is not inconsistent with federal law." *Hardin v. Straub*, 490 U.S. 536, 538 (1989). "[A] § 1983 claim is governed by the statute of limitations that applies to personal injury tort claims in the state in which such a claim arises." *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Cito v. Bridgewater Township Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989). Under New Jersey law, there is a two-year statute of limitations period for personal-injury torts, including medical malpractice. N.J. Stat. Ann. § 2A:14-2. Additionally, a state's tolling principles also govern § 1983 claims when they do not conflict with federal law. *Id.* "[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law. *Wallace*, 549 U.S. at 388.

While a plaintiff is not required to plead that the claim has been brought within the statute of limitations, *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002), the Supreme Court observed in *Jones v. Bock*, 549 U.S. at 215, that if the allegations of a complaint, "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."

Here, the Complaint was filed in state court on April 25, 2018. (ECF No. 1 at Exhibit A.) To be timely, Plaintiff's claims with respect to inadequate diagnosis and treatment for bladder cancer must have accrued no earlier than two years prior to that date. The Medical Defendants appear to assert that the Plaintiff's claims against each of them accrued on the dates each

Medical Defendant refused to test him for bladder cancer. The Court is unconvinced that the Complaint is untimely on its face, as Plaintiff may have a basis for equitable tolling or delayed accrual. Here, Defendants have not addressed whether the discovery rule and/or the continuing violations doctrine apply in this situation.[10]

Furthermore, in *Pearson v. Secretary Dept. of Corrections*, 775 F.3d 598, 603 (3d Cir. 2015), the Third Circuit, applying Pennsylvania law, held that the statute of limitations for civil rights claims is tolled while a prisoner exhausts his administrative remedies. Here, it is unclear whether Plaintiff exhausted his administrative remedies or how long that process took, and these issues are not ripe for determination on a motion to dismiss.

For these reasons, it is not obvious on the face of the Complaint that the § 1983 claims in connection with the inadequate diagnosis and treatment of bladder cancer were filed beyond the applicable the statute of limitations. *See, e.g., Lomax v. Tennis*, 708 F. App'x. 55, 57 (3d Cir. 2017). The Court will therefore deny without prejudice the motion to dismiss on timeliness grounds.

---

[10] "Under New Jersey law, a statute of limitations can be tolled based upon equitable principles, including the discovery rule." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quoting *Freeman v. State*, 347 N.J. Super. 11, 788 A.2d 867, 878 (App. Div. 2002). "The discovery rule postpones a claim from accruing if a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person." *Id.* (citing *Caravaggio v. D'Agostini*, 166 N.J. 237, 765 A.2d 182, 187 (2001)). Relatedly, the "continuing violations doctrine" is an another "equitable exception to the timely filing requirement." *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001). Under the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Cowell*, 263 F.3d at 292 (quoting *Brenner v. Local 514, United Broth. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)). Additionally, at least one Circuit Court has held that a deliberate indifference claim based on delayed diagnosis of cancer accrues at the time the cancer is diagnosed. *See Devbrow v. Kalu*, 705 F.3d 765, 766, 769 (7th Cir. 2013) (holding that the statute of limitations for a § 1983 deliberate-indifference claim brought to redress a medical injury does not begin to run until the plaintiff knows of his injury and its cause).

### c. Failure to State a Claim For Relief

That brings the Court to the merits of Plaintiff's Eighth Amendment claims. The Court notes that it previously liberally construed the Original Complaint, which had been filed in state court, to raise claims under federal and state law and invited Plaintiff to clarify the basis for any state law tort claims in his Amended Complaint; however, Plaintiff's Amended Complaint refers only to Eighth Amendment claims brought pursuant to 42 U.S.C. § 1983 and does not reference medical malpractice or the NJCRA. The Amended Complaint does contain a single reference to the supplemental jurisdiction statute, 28 U.S.C. § 1337, *see* ECF No. 39, Amended Complaint at ¶ 2, but contains no references to medical negligence or medical malpractice. Defendants have not moved to dismiss any state law claims. The Court therefore construes Plaintiff to raise both § 1983 claims under the Eighth Amendment and under the state law analog to § 1983, but does not construe Plaintiff to raise medical malpractice claims under state law.[11]

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). A prisoner claiming that this right has been violated must show that prison officials were deliberately indifferent to his serious medical needs. *See Estelle*, 429 U.S. at 104. The

---

[11] "New Jersey Courts 'have consistently looked to federal § 1983 jurisprudence for guidance' and have 'repeatedly interpreted NJCRA analogously to § 1983.'" *Ingram v. Township of Deptford*, 911 F. Supp.2d 289, 298 (D.N.J. 2012)(quoting (*Gonzalez v. Auto Mall 46*, Inc., Nos. 2412–09 & 216–10, 2012 WL 2505733, at *4 (N.J. Super. Ct. App. Div. July 2, 2012)(citing *Rezem Family Assocs., LP v. Borough of Millstone*, 423 N.J. Super. 103 (2011), *cert. denied*, 208 N.J. 366 (2011)(additional citations omitted); *see also Murphy v. New Jersey Dep't of Corr.*, 2017 WL 2482878, at *2 (D.N.J., 2017). The NJCRA claims are addressed together with the § 1983 claims. To the extent Plaintiff seeks to raise medical malpractice claims under state law, he must do so by way of a motion to amend pursuant to Fed. R. Civ. P. 15, and will be required to show that he complied with state law requirements in order to prevail.

seriousness of Plaintiff's conditions does not appear disputed in this case. Deliberate indifference is established where a prison official knew of and disregarded an excessive risk to the prisoner's health. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

To demonstrate the deliberate indifference prong of *Estelle*, a plaintiff must show that the defendants were more than merely negligent in diagnosing or treating his serious medical condition. Mere medical malpractice or disagreement with the proper treatment of an illness cannot give rise to a violation of the Eighth Amendment. *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990); *see also Rouse*, 182 F.3d at 197. The Court of Appeals has concluded that the deliberate indifference standard is met "when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment." *Whooten v. Bussanich*, 248 F. App'x. 324, 326–27 (3d Cir. 2007) (citing *Monmouth v. Lanzaro*, 834, F.2d 326, 346–47 (3d Cir. 1987); *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)). The Third Circuit has also held that prison officials who continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference. *See Rouse*, 182 F.3d at 197; *White*, 897 F.2d at 109.

As noted above, Plaintiff's Original and Amended Complaints are not a model of clarity. Nevertheless, the Court is satisfied at this early stage of the proceedings that Plaintiff has pleaded sufficient facts to showing that the Medical Defendants were deliberately indifferent to his serious medical condition, in connection with his diagnosis and treatment for bladder cancer. Starting in late 2013-2014, Plaintiff complained to Medical Defendants Brewin, Ivory,

Camarillo, and Jackson at his "Chronic Care" visits on more than one occasion that he had a family history of bladder cancer and had persistent symptoms he claims are consistent with bladder cancer. These Providers told him that there was no test for bladder cancer. The only treatment provided over this period appears to be a painful rectal exam by Defendant Ivory that was unrelated to his symptoms and an ultrasound of his testicle requested by Defendant Camarillo. When Plaintiff requested an MRI to check for bladder cancer, provider Jackson asked him if he knew how expensive MRIs are. After experiencing symptoms for approximately two years while having quarterly Chronic Care visits with these Providers, Plaintiff began to urinate blood and was prescribed antibiotics by Defendant Provider Camarillo. Defendant Camarillo subsequently sent Plaintiff for an ultrasound and MRI. He continued to urinate blood and experience significant pain for a period of four months, however, while he waited to confirm that he had bladder cancer. Plaintiff has clarified in his Amended Complaint that he also complained directly to Defendants Dr. Ahsan and to Dr. Nwachukwu about the failure to treat and diagnose his bladder cancer on numerous occasions during this time period.

 Notably, although each Medical Defendant to whom he complained over this two year period told him that there was no test for bladder cancer, Plaintiff's oncologist told him this is untrue. Rather than asserting mere negligence, Plaintiff asserts that that the Medical Defendants intentionally lied to him and delayed his medical treatment and his surgery because he is a prisoner and to save money. At least one of the Medical Defendants directly referenced cost when Plaintiff requested treatment. These alleged delays for nonmedical reasons meant that Plaintiff's cancer was discovered at a more advanced stage and required a significant surgery rather than nonsurgical intervention.

These allegations taken together are sufficient to suggest at this early stage that Plaintiff's Eighth Amendment rights were violated and that each of the Medical Defendants had personal involvement in the alleged wrongs. Plaintiff may not be able to prove these allegations as to all or any of the Medical Defendants, but he has pleaded sufficient facts to state a "plausible" claim for relief. *See Iqbal*, , 556 U.S. at 678.[12] The Court will deny the motion to dismiss as to the Medical Defendants in connection with this claim.

The Court will also deny the motion to dismiss as to Defendant Nwachukwu in connection with her alleged inadequate treatment of Plaintiff's neck injury, as Plaintiff has provided sufficient facts that this Defendant is responsible for the treatment of his neck injury and refused to implement the specialist's recommended treatment plan for his neck injury. Although the Medical Defendants argue that Plaintiff concedes that he received therapy, and his disputes are merely about the type of treatment provided, Plaintiff has alleged that the therapy was delayed for a year and has not meaningfully improved his neck injury, and that he has not been provided with pain medication since 2017. As such, the motion to dismiss is denied as to Defendant Nwachukwu in connection the Eighth Amendment claim for inadequate treatment of Plaintiff's neck injury.[13]

## V.     **CONCLUSION**

For the reasons explained in this Opinion, the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied as to the Medical Defendants. An appropriate Order follows.

---

[12] Indeed, Plaintiff's treatment records and other evidence may show that the one or more of the Defendants provided adequate care or were merely negligent. And Plaintiff's allegations that the Medical Defendants did not take his complaints seriously or believe that he had bladder cancer may prove true, thus dooming his claims. These allegations, however, contradict Plaintiff's allegations that the Medical Defendants lied to him about treatment options because he is a prisoner and to save money.

[13] Defendants' arguments are more appropriate to summary judgment where there is full record.

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

DATED: March 17, 2020