**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| KENNETH PAGLIAROLI, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 18-12412 (GC) (TJB) |
| | : | |
| v. | : | |
| | : | |
| NEW JERSEY DEPARTMENT OF | : | **OPINION** |
| CORRECTIONS, et al., | : | |
| | : | |
| Defendants. | : | |

---

**CASTNER, District Judge**

## I.      INTRODUCTION

Plaintiff, Kenneth Pagliaroli ("Plaintiff" or "Pagliaroli"), is a state prisoner incarcerated at the New Jersey State Prison ("NJSP").  He is proceeding *pro se* in this civil action.  Presently pending before this Court is Defendants Dr. Ahsan's, James Brewin's, Joy Camarillo's, Provider Ivory's, Provider Ms. Jackson's and Dr. Nwachukwu's (hereinafter the "Moving Defendants") Motion for Summary Judgment.  (*See* ECF 118).  For the following reasons, Moving Defendants' Motion for Summary Judgment is denied.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

The circumstances giving rise to Plaintiff's claims against the Moving Defendants relate to their delay in diagnosing Plaintiff's bladder cancer as well as the treatment (or lack thereof) Plaintiff received from Defendant Nwachukwu for a neck injury while incarcerated at NJSP. Plaintiff asserts the Moving Defendants were deliberately indifferent to his serious medical needs

in violation of the Eighth Amendment to the United States Constitution under 42 U.S.C. § 1983 as well as under the New Jersey Civil Rights Act ("NJCRA").[1]

The underlying factual recitation is taken from Plaintiff's pleadings, Moving Defendants' Statement of Undisputed Material Facts along with Plaintiff's medical records that Moving Defendants have included as a sealed exhibit to their Motion for Summary Judgment.  Plaintiff asserts that starting in 2013 until 2016, he complained to the Moving Defendants about having bladder cancer, but was consistently told by them that there was no test for bladder cancer.  (*See* ECF 39 at 6-7).  Early on, Plaintiff complained of symptoms that Plaintiff claims were similar to those his brother suffered from who had bladder cancer.  (*See* ECF 1 at 11).

Ultimately, on January 25, 2016, Plaintiff saw Defendant Camarillo at sick call.  (*See* Moving Defs.' Motion S.J. Exh. B, ECF 116 at 43).  Plaintiff complained of having blood and a possible "stone" in his urine.  (*See id.*).  Plaintiff also complained about constipation at this time. (*See id.* at 44).  Labs were ordered along with ordering a follow-up in one week.  (*See id.* at 45).

On February 2, 2016, Defendant Camarillo saw Plaintiff for his follow-up appointment. (*See* Moving Defs.' Statement of Undisputed Material Facts, ECF 118-2 ¶ 4).  Defendant Camarillo noted the treatment plan was to request an ultrasound, continue current cipro, increase fluid intake and for Plaintiff to report any fever.  (*See id.*; *see also* ECF 116 at 42).

On February 9, 2016, Defendant Camarillo saw Plaintiff for a sick call visit due to Plaintiff urinating blood.  (*See id.* at 37-38).  Defendant Camarillo noted that a renal ultrasound was requested and pending.  (*See id.* at 39).  Plaintiff's urine was sent for culture and sensitivity and a

---

[1] As the Court has previously noted, Plaintiff's § 1983 and NJCRA claims are analyzed analogously.  *See Pagliaroli v. New Jersey Dep't of Corr.*, No. 18-12412, 2020 WL 1272121, at *6 n.11 (D.N.J. March 17, 2020) (citations omitted).

urology consult was ordered.  (*See id.*).  A follow-up visit was to be scheduled after Plaintiff saw urology and/or if there was frank bleeding or abdominal pain.  (*See id.*).

On February 23, 2016, Plaintiff received an ultrasound of his abdomen.  (*See* ECF 118-2 ¶ 6).  The ultrasound found multiple bilateral renal cystic lesions of about three centimeters around Plaintiff's kidneys along with a mass arising from Plaintiff's bladder base measuring 3.1 centimeters maximally.  (*See id.*; *see also* ECF 116 at 36).

Plaintiff saw Defendant Brewin on March 2, 2016 for a sick call.  (*See* ECF 118-2 ¶ 7). Plaintiff complained of dysuria and hematuria.  (*See id.*).  Plaintiff again noted his brother had had bladder cancer.  (*See id.*; *see also* ECF 116 at 33).  Defendant Brewin ordered a CT scan along with a follow-up appointment in one-month.  (*See* ECF 118-2 ¶ 7; *see also* ECF 116 at 35).

On March 9, 2016, Defendant Camarillo met with Plaintiff for his follow-up appointment from his CT scan.  (*See* ECF 118-2 ¶ 8; *see also* ECF 116 at 28-32).  On March 28, 2016, Defendant Camarillo confirmed that urology had seen Plaintiff and that a transurethral resection of the bladder tumor was scheduled for April 15, 2016.  (*See* ECF 116 at 25, 27).

On March 30, 2016, Defendant Nwachukwu saw Plaintiff for a follow-up visit.  (*See* ECF 118-2 ¶ 11; *see also* ECF 116 at 23-24).  Plaintiff denied any new complaints and noted that he was aware he needed a biopsy on his bladder.  (*See* ECF 118-2 ¶ 11).  Defendant Nwachukwu reassured Plaintiff that his procedure was scheduled and confirmed with the lab that Plaintiff's pre-operation labs would be ordered.  (*See id.*).  Defendant Nwachukwu also made a note to follow-up after the procedure was complete.  (*See id.*).

On April 14, 2016, Plaintiff gave his signed consent for the resection procedure.  (*See id.* ¶ 12).  On or about April 15, 2016, Plaintiff had surgery at St. Francis Medical Center. (*See id.* ¶ 13).  On April 17, 2016, Plaintiff was admitted to the prison infirmary following his transurethral

resection of the bladder tumor.  (*See id.* ¶ 14).  Plaintiff complained of serious pain and could not urinate such that Defendant Ahsan ordered Plaintiff to be sent back to St. Francis Hospital given his condition.  (*See id.* ¶ 15).

Plaintiff returned to NJSP on April 19, 2016.  Defendant Nwachukwu then saw Plaintiff again on April 20, 2016 in the NJSP infirmary.  (*See id.* ¶ 16).  Plaintiff reported that he felt better, did not have any difficulty urinating and wanted to return to his unit.  (*See id.*).  Defendant Nwachukwu reported that Plaintiff was doing very well, ordered Plaintiff's catheter be changed to a leg bag, that Plaintiff was to be discharged from the infirmary with a follow-up appointment in one week.  (*See id.*).

On May 3, 2016, Defendant Camarillo saw Plaintiff on sick call for neck pain Plaintiff was experiencing.  (*See id.* ¶ 17).  Defendant Camarillo noted that Plaintiff was already receiving Tylenol for other medical issues and that Plaintiff was not in acute distress.  (*See id.*)

On May 13, 2016, Plaintiff had a urology telemedicine consultation.  (*See* ECF 116 at 8).  Plaintiff was informed at that time that the pathology from the procedure revealed superficial low-grade noninvasive papillary urothelial carcinoma.  (*See id.*).  Plaintiff was given options of management including surveillance cystoscopy.  (*See id.*).  Plaintiff's medical records indicate that arrangements were to be made for Plaintiff to undergo cystoscopy on a surveillance basis.  (*See id.*).

On May 25, 2016, Plaintiff was seen by Defendant Camarillo for a sick call and follow-up visit.  (*See id.* at 5-7).  Plaintiff complained of joint pain at this visit.  (*See id.*).  Plaintiff complained of left shoulder pain which radiated to his left arm and included numbness to his fingers, possibly from an injury occurring on April 18, 2019.  (*See id.* a 5-6).  Plaintiff's medical records indicate that Plaintiff stated he was already seen for C-spine X-ray results and that the prior provider was

aware of his left shoulder and arm pain as well as the numbness in his fingers. (*See id.* at 6). Plaintiff stated he wished to have an MRI on his C-spine. (*See id.*). Defendant Camarillo though made Plaintiff aware of pending physical therapy and that he would be evaluated by the physical therapy staff. (*See id.*).

On November 3, 2016, Defendant Jackson saw Plaintiff on a sick call. (*See* ECF 118-2 ¶ 20; *see also* ECF 116 at 2-4). Plaintiff's chief complaint at this visit was that he was not getting physical therapy for his back. (*See* ECF 118-2 ¶ 20; *see also* ECF 116 at 2). However, Plaintiff's physical therapy was stopped in April 2016 due to Plaintiff's bladder operation. (*See* ECF 118-2 ¶ 20; *see also* ECF 116 at 3). Defendant Jackson then encouraged Plaintiff to do gentle stretching and range of motion exercises as well as ordered Plaintiff to receive Tylenol for pain for thirty days. (*See* ECF 118-2 ¶ 20; *see also* ECF 116 at 3-4).

Plaintiff initiated suit in this case in state court via his Initial Complaint dated April 6, 2018, but not filed until April 25, 2018. Plaintiff subsequently filed an Amended Complaint. Plaintiff complained that had he been tested for bladder cancer when he first told the Moving Defendants of his symptoms, he would have had to undergo less invasive procedures and convalescence. (*See* ECF 39 at 11). The Court has construed Plaintiff's allegations raised in his Initial and Amended Complaint together since he is proceeding *pro se*. *See Pagliaroli*, 2020 WL 1272121, at *1 n.2. Defendant Ahsan, with the consent of Defendant Nwachukwu, and former Defendants the State of New Jersey and the New Jersey Department of Corrections ("NJDOC"), removed this case to federal court on August 2, 2018. (*See* ECF 1).

Defendants Ahsan, Nwachukwu, and former Defendants the State of New Jersey and the NJDOC separately moved to dismiss Plaintiff's Initial Complaint. (*See* ECF 6, 16, 17 & 18). On March 28, 2019, the Court dismissed Plaintiff's claims against former Defendants the State of New

Jersey and the NJDOC with prejudice and dismissed without prejudice Plaintiff's Eighth Amendment claims against Defendant Ahsan and Defendant Nwachukwu for failure to state a claim upon which relief could be granted. (*See* ECF 35 & 36). Plaintiff was given leave to file an amended complaint that corrected the deficiencies of his claims dismissed without prejudice. (*See id.*).

On May 1, 2019, Plaintiff filed an Amended Complaint. (*See* ECF 39). Moving Defendants then sought dismissal of the Amended Complaint. (*See* ECF 47). Moving Defendants asserted that Plaintiff failed to exhaust his administrative remedies, that Plaintiff's action was time-barred as it related to his diagnosis and treatment for bladder cancer and that Plaintiff failed to state claims that entitled him to relief.

On March 17, 2020, the Court denied Moving Defendants' Motion to Dismiss. With respect to exhaustion, this Court noted that such an argument was an affirmative defense that Moving Defendants had the burden to prove. *See Pagliaroli*, 2020 WL 1272121 at \*5 (citing *Jones v. Block*, 549 U.S. 199, 216 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003)). Thus, because Plaintiff was not required to plead and prove exhaustion, the Court determined that deciding the issue on a motion to dismiss was improper. *See id.*

The Court also rejected Moving Defendants' timeliness argument at the Motion to Dismiss stage with respect to Plaintiff's claims related to inadequate diagnosis and treatment for bladder cancer. The Court noted that while Plaintiff filed his Initial Complaint on April 25, 2018, Plaintiff could have a basis for equitable tolling and/or delayed accrual of his claims. *See id.* at \*5-6. Thus, dismissal was inappropriate at that stage. *See id.*

With respect to Moving Defendants arguments related to Plaintiff's purported failure to state a claim, the Court declined to dismiss Plaintiff's claims under the Eighth Amendment against the Moving Defendants for failure to state a claim. *See Pagliaroli*, 2020 WL 1272121, at *6-8.

On June 23, 2022, Moving Defendants filed their Motion for Summary Judgment. (*See* ECF 118). Like their Motion to Dismiss, Moving Defendants assert that Plaintiff has failed to exhaust administrative remedies, that his claims related to his bladder cancer are time-barred and that he has failed to state a claim upon which relief may be granted. On July 13, 2022, Plaintiff filed a response (albeit unsigned) to Moving Defendants' Statement of Material Facts not in Dispute. (*See* ECF 121).

On July 14, 2022, Plaintiff filed a letter which requested more time for discovery. (*See* ECF 122). Moving Defendants opposed this request. (*See* ECF 123). On July 28, 2022, Magistrate Judge Tonianne J. Bongiovanni denied Plaintiff's request for additional time for discovery. (*See* ECF 125).

On August 1, 2022, this Court gave Plaintiff twenty-one (21) additional days in which to file a complete response to Moving Defendants' Motion for Summary Judgment as his July 13, 2022 filing only responded to Moving Defendants' Statement of Material Facts not in Dispute, but did not include any accompanying legal brief or arguments. (*See* ECF 126). Plaintiff never filed a response to this Court's August 1, 2022 Order. Accordingly, this Court shall now analyze Moving Defendants' pending Motion for Summary Judgment.

## III.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing

law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . ., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

*Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## IV.    DISCUSSION

As noted above, Moving Defendants make three separate arguments in support of their Motion for Summary Judgment.  Each are considered in turn.

### A.    Exhaustion

Moving Defendants argue they are entitled to summary judgment in this action because Plaintiff has failed to exhaust administrative remedies on his claims.   The Court previously outlined in a prior opinion the relevant law as it relates to exhaustion of administrative remedies as follows:

> The Prison[ ] Litigation Reform Act of 1995 ("PLRA") provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). The exhaustion requirement is mandatory and, thus, bars an inmate from commencing such an action without first properly exhausting available administrative remedies.  *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 85, 93–94 (2006).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016).

*Pagliaroli*, 2020 WL 1272121, at *5.

Moving Defendants' lack of exhaustion argument in their Motion for Summary Judgment suffers from similar defects as it did in their Motion to Dismiss.  Indeed, Moving Defendants assert in their Motion for Summary Judgment that "Plaintiff fails to demonstrate that he exhausted his administrative remedies as it relates to the [Moving] Defendants prior to filing this action."  (ECF

118-1 at 18).  However, failure to exhaust administrative remedies is an affirmative defense that

the Moving Defendants bear the burden to *plead and prove*.  *See Jones v. Bock*, 549 U.S. 199, 216;

*Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).  Moving Defendants' Statement of Material

Facts Not in Dispute, accompanying exhibits and legal brief are completely silent regarding any

grievances (or lack thereof) that Plaintiff may have filed.  Moving Defendants have not submitted

anything in the attached record from any witness who might possess knowledge regarding relevant

information of possible administrative grievances Plaintiff may have filed.  Thus, under these

circumstances, Moving Defendants have failed to meet their initial burden at summary judgment

that there is the absence of a genuine issue of material fact with respect to exhaustion, something

that, as an affirmative defense, *Defendants must prove*.  Accordingly, this Court finds Moving

Defendants are not entitled to summary judgment based on their lack of administrative exhaustion

argument.

    B.  <u>Statute of Limitations & Bladder Cancer Claims</u>

       The crux of Plaintiff's claims against the Moving Defendants with respect to his bladder

cancer is that Moving Defendants failed to timely diagnosis his bladder cancer.  With respect to

the applicable statute of limitations on this claim, this Court previously outlined the underlying

law as follows:

> Congress has not codified a statute of limitations applicable to suits
> for the vindication of civil rights and has instead "determined that
> gaps in federal civil rights acts should be filled by state law, as long
> as that law is not inconsistent with federal law."  *Hardin v. Straub*,
> 490 U.S. 536, 538 (1989).  "[A] § 1983 claim is governed by the
> statute of limitations that applies to personal injury tort claims in the
> state in which such a claim arises."  *Kach v. Hose*, 589 F.3d 626,
> 639 (3d Cir. 2009); *see also Wallace v. Kato*, 549 U.S. 384, 387
> (2007); *Cito v. Bridgewater Township Police Dept.*, 892 F.2d 23, 25
> (3d Cir. 1989).  Under New Jersey law, there is a two-year statute of
> limitations period for personal-injury torts, including medical
> malpractice.  N.J. Stat. Ann. § 2A:14-2.  Additionally, a state's

> tolling principles also govern § 1983 claims when they do not
> conflict with federal law. *Id.* "[T]he accrual date of a § 1983 cause
> of action is a question of federal law that is not resolved by reference
> to state law." *Wallace*, 549 U.S. at 388.

*Pagliaroli*, No. 18-12412, 2020 WL 1272121, at *5.

While Plaintiff's Initial Complaint was not filed until April 25, 2018, it is dated April 6, 2018. For purposes of determining when Plaintiff "filed" his Initial Complaint, this Court will apply the prisoner mailbox rule which states that the filing is deemed filed "as the time [plaintiff] delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 4876 U.S. 266, 276 (1988). The earliest this could have occurred is April 6, 2018, the date Plaintiff dated his Initial Complaint. Accordingly, to be timely, Plaintiff's claims with respect to inadequate diagnosis and treatment for bladder cancer must have accrued no earlier than two years prior to April 6, 2018. *See, e.g.*, *Maples v. Warren*, No. 12–0993, 2012 WL 1344828, at *1 n.2 (D.N.J. Apr. 16, 2012) ("Often times, when the court is unable to determine the exact date that a petitioner handed his petition to prison officials for mailing, it will look to the signed and dated certification of the petition.").

As noted by the Third and other Circuits:

> When a physician's failure to diagnose, treat, or warn a patient
> results in the development of a more serious medical problem than
> that which previously existed, identification of both the injury and
> its cause may be more difficult for a patient than if affirmative
> conduct by a doctor inflicts a new injury. Where a claim . . . is based
> on the failure to diagnose or treat a pre-existing condition, the injury
> is not the mere undetected existence of the medical problem at the
> time the physician failed to diagnose or treat the patient or the mere
> continuance of that same undiagnosed problem in substantially the
> same state. Rather, the injury is the *development* of the problem into
> a more serious condition which poses greater danger to the patient
> or which requires more extensive treatment.

*Hughes v. United States*, 263 F.3d 272, 276–77 (3d Cir. 2001) (quoting *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1983)). Thus, "a plaintiff's cause of action based on a failure to

diagnose cancer, resulting in progression of the disease over time and more intensive treatment than would have been required if it had been detected sooner, does not accrue until the plaintiff is actually diagnosed with cancer." *See Tankesly v. Corrs. Corp. of Am.*, No. 14-911, 2017 WL 3034654, at *12 (M.D. Fla. July 18, 2017); *see also Devbrow v. Kalu*, 705 F.3d 765, 769-70 (7th Cir. 2013) (deliberate indifference claim for delayed diagnosis of cancer accrues when plaintiff received cancer diagnosis). By way of example, in *Waters v. Geo Grp., Inc.*, No. 15-282, 2016 WL 4373717, at *5 (E.D. Va. Aug. 10, 2016), the plaintiff was aware of a large growth on his neck, which Plaintiff referred to as a tumor. In *Waters*, however, the court determined that plaintiff's cause of action accrued no earlier than when he was officially diagnosed with lymphoma. *See id.*

In this case, while Plaintiff knew he had a growth on his bladder by March 2016 after diagnostic testing, or more than two years prior to when he filed this action on April 6, 2018, doctors performed surgery on Plaintiff on April 15, 2016. Furthermore, the record indicates that Plaintiff was informed on or about May 13, 2016, during his urology consultation that the pathology findings from the April 15, 2016 procedure indicated that the bladder growth was carcinoma. (*See* ECF 116). Accordingly, Plaintiff's claim for Moving Defendants' delay in diagnosing his bladder cancer occurred no earlier than the date of his procedure, April 15, 2016, or, more likely, May 13, 2016, when the record indicates Plaintiff received the biopsy results on the growth on his bladder. Given that both dates are within two-years of April 6, 2018 - the date this Court has determined Plaintiff "filed" his Initial Complaint - this Court declines to grant summary judgment to the Moving Defendants on Plaintiff's bladder cancer claims based on their statute of limitations argument.

C.   Fact Issues Concerning Plaintiff's Bladder Cancer Claims Against the Moving Defendants & Neck Injury Claims Against Nwachukwu

Next, Moving Defendants argue that Plaintiff has provided no facts to support his claims that they were deliberately indifferent to the delay in diagnosing his bladder cancer and treatment for Plaintiff's neck injury.

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).   Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).  We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.  Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).  Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06, (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013).  Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury."  *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted).  "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"  *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir.

2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

In previously denying Moving Defendants' Motion to Dismiss, the Court noted it would consider Plaintiff's factual allegations raised in both his Initial and Amended Complaint.   In denying Moving Defendants' Motion to Dismiss as to Plaintiff's bladder cancer claims, the Court stated as follows:

> Starting in late 2013-2014, Plaintiff complained to Medical Defendants Brewin, Ivory, Camarillo, and Jackson at his "Chronic Care" visits on more than one occasion that he had a family history of bladder cancer and had persistent symptoms he claims are consistent with bladder cancer.  These Providers told him that there was no test for bladder cancer.  The only treatment provided over this period appears to be a painful rectal exam by Defendant Ivory that was unrelated to his symptoms and an ultrasound of his testicle requested by Defendant Camarillo. When Plaintiff requested an MRI to check for bladder cancer, provider Jackson asked him if he knew how expensive MRIs are.  After experiencing symptoms for approximately two years while having quarterly Chronic Care visits with these Providers, Plaintiff began to urinate blood and was prescribed antibiotics by Defendant Provider Camarillo.  Defendant Camarillo subsequently sent Plaintiff for an ultrasound and MRI. He continued to urinate blood and experience significant pain for a period of four months, however, while he waited to confirm that he had bladder cancer.   Plaintiff has clarified in his Amended Complaint that he also complained directly to Defendants Dr. Ahsan and to Dr. Nwachukwu about the failure to treat and diagnose his bladder cancer on numerous occasions during this time period.
>
> Notably, although each Medical Defendant to whom he complained over this two year period told him that there was no test for bladder cancer, Plaintiff's oncologist told him this is untrue.  Rather than asserting mere negligence, Plaintiff asserts that that the Medical Defendants intentionally lied to him and delayed his medical treatment and his surgery because he is a prisoner and to save money.  At least one of the Medical Defendants directly referenced cost when Plaintiff requested treatment.  These alleged delays for nonmedical reasons meant that Plaintiff's cancer was discovered at a more advanced stage and required a significant surgery rather than nonsurgical intervention.

> These allegations taken together are sufficient to suggest at this early stage that Plaintiff's Eighth Amendment rights were violated and that each of the Medical Defendants had personal involvement in the alleged wrongs.   Plaintiff may not be able to prove these allegations as to all or any of the Medical Defendants, but he has pleaded sufficient facts to state a "plausible" claim for relief.

*Pagliaroli*, 2020 WL 1272121, at *7.

Moving Defendants' Motion for Summary Judgment suffers from a fatal flaw.   As indicated above, Plaintiff's claims arising from his bladder cancer relate to the Moving Defendants purported failure to properly test for and timely diagnose Plaintiff's bladder cancer.   This is despite purported facts that Plaintiff explained he was suffering from symptoms similar to his brother who had bladder cancer.   Plaintiff purportedly raised these issues to Defendants from 2013 thru 2016.   However, Moving Defendants fail to include anything in the record related to Plaintiff's treatment prior to 2016.[2]   It is *this period* that is at the crux of Plaintiff's deliberate indifference claim against the Moving Defendants related to their purported delay in diagnosing Plaintiff's bladder cancer.   Accordingly, under these circumstances, this Court cannot say that Moving Defendants have met their burden to show that there are no genuine issues of material fact outstanding related to Plaintiff's claim that Moving Defendants were deliberately indifferent in their delay in diagnosing Plaintiff's bladder cancer.   Accordingly, Moving Defendants are not entitled to summary judgment based on this argument.

---

[2] Plaintiff did note in his Initial Complaint that Defendant Ivory took a stool sample from him in 2013.   (*See* ECF 1 at 11-12).   However, Plaintiff states he never received the results of this test.   Furthermore, as noted above, the record does not include anything regarding Plaintiff's treatment prior to 2016, which would purportedly include the results of this stool sample.   Given the dearth of information in this record regarding Plaintiff's treatment (or lack thereof) prior to 2016, this Court finds such an allegation by Plaintiff does not warrant granting Defendant Ivory or any of the other Moving Defendants summary judgment at this time.

The facts giving rise to the cause of Plaintiff's neck injury occurred when Defendants Kern and Boone transported Plaintiff back from St. Francis Hospital to NJSP on April 19, 2016.[3]  As to the Moving Defendants, Plaintiff's claims related to the treatment for his neck injury only relate to Defendant Nwachukwu.[4]

In denying Defendant Nwachukwu's request to dismiss Plaintiff's neck injury claims against her for Plaintiff's purported failure to state a claim, the Court stated as follows:

> The Court will also deny the motion to dismiss as to Defendant Nwachukwu in connection with her alleged inadequate treatment of Plaintiff's neck injury, as Plaintiff has provided sufficient facts that this Defendant is responsible for the treatment of his neck injury and refused to implement the specialist's recommended treatment plan for his neck injury.  Although the Medical Defendants argue that Plaintiff concedes that he received therapy, and his disputes are merely about the type of treatment provided, Plaintiff has alleged that the therapy was delayed for a year and has not meaningfully improved his neck injury, and that he has not been provided with pain medication since 2017.  As such, the motion to dismiss is denied as to Defendant Nwachukwu in connection the Eighth Amendment claim for inadequate treatment of Plaintiff's neck injury.

*Pagliaroli*, 2020 WL 1272121, at *8.

As indicated in the Court's prior opinion, Plaintiff's complaint regarding his treatment by Defendant Nwachukwu related to his neck injury includes the period within 2017.  However, the record provided by Moving Defendants in their Motion for Summary Judgment is completely silent regarding Plaintiff's medical treatment after November 2016.  Given this lack of clarity regarding Plaintiff's medical treatment in at least a portion of the period Plaintiff complains about,

---

[3] Defendants Kern and Boone have separately filed a Motion for Summary Judgment (ECF 119) related to the injuries Plaintiff suffered during his transport.

[4] Based on the allegations of Plaintiff's Initial and Amended Complaint, and because Plaintiff does not argue in a response that he is asserting his neck injury claims against any other of the Moving Defendants, this Court will only construe this claim against Defendant Nwachukwu as it did in deciding Moving Defendants' Motion to Dismiss.

this Court declines to find that there are no genuine issues of material fact outstanding regarding whether Defendant Nwachukwu was deliberately indifferent to Plaintiff's medical needs related to his neck injury.  Accordingly, Plaintiff's claim against Defendant Nwachukwu related to his neck injury shall be permitted to proceed as Defendant Nwachukwu is not entitled to summary judgment on this claim based on the record provided this Court.

## V.    CONCLUSION

For the foregoing reasons, Moving Defendants' Motion for Summary Judgment is denied. An appropriate order will be entered.


DATED:  January 31, 2023                          _s/ Georgette Castner_
                                                  GEORGETTE CASTNER
                                                  United States District Judge

17